Robert I. MOORE, Plaintiff-Appellant,

v.

Charles OTERO, Individually and as Chief of Police, City of Tampa, Florida, et al., etc., Defendants-Appellees.

No. 75–4417.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1977.

Cary R. Singletary, Tampa, Fla., for plaintiff-appellant.

Henry E. Williams, Jr., City Atty., Stann W. Givens, Matias Blanco, Jr., Asst. City Attys., Tampa, Fla., for defendants-appellees.

Before CLARK and GEE, Circuit Judges, and MARKEY,* Chief Judge.

GEE, Circuit Judge:

In this appeal, we consider a police officer's contention that his transfer from corporal to police patrolman deprived him of "liberty" or "property," vesting him with a right under the due process clause of the fourteenth amendment to a hearing on the charge that provoked the transfer. The district court granted summary judgment for the City of Tampa, and the plaintiff appeals. We affirm.

At the time of the district court's ruling, the plaintiff, Robert Moore, was a sixteen-year veteran of the City of Tampa police, having joined the force in 1959. Moore served from 1970 to 1974 as a corporal. The position is a hybrid; although a corporal has operational duties like any other patrolman, he also has the supervisory responsibilities of training probationary pa-

---

* Of the United States Court of Customs and Patent Appeals, sitting by designation.

trolmen and of serving as squad supervisor in the absence of the sergeant. Patrolmen are appointed as corporals on the basis of ability and demonstrated above-average performance. Only continued above-average performance will assure a patrolman's retention of the position.[1] The chief of police, with the approval of the mayor, assigns patrolmen to corporal status but, again with the approval of the mayor, may reassign appointees to the duties of a regular patrolman.[2] In this case, the chief of police reassigned Moore to patrolman's duties after other officers reported that Moore failed to assist an off-duty patrolman investigating a possible breaking-and-entering suspect.

■ Corporal appointments have no effect on an employee's civil service status, so civil service review procedures do not apply when the chief of police reassigns a corporal to patrolman duties. The City of Tampa Code does provide a grievance procedure when civil service review does not apply.[3]

1. Standard Operating Procedure Intra-Division No. 100.05, Duties and Responsibilities of Corporal of Police Assigned to the Uniform Districts, Tampa Police Department, Tampa, Florida (June 22, 1969) states:

A. *Position*:
   1. The position of Police Corporal will be appointive based on ability and demonstrated performance above average. Retention of the position will depend on *continuous above average performance*.
B. *Duties and Responsibilities*:
   1. The Corporal will have all the duties and responsibilities regularly assigned to a Patrolman.
   2. He will serve as a Field Instructor and have all the duties and responsibilities prescribed to that position.
   3. The Corporal is directly responsible for the in-service training (field) of the Probationary Patrolman assigned to him and will assist with the training and supervision of members of his squad as directed.
   4. While the Corporal's position is primarily an operational position, at times he has some supervisory responsibility. He will assist the Sergeant with the supervision and training of the squad and will assume the duties of the Squad Supervisor during the absence of the Sergeant or as directed by a superior officer.
   5. In order to accomplish the functions outlined in specification number four, the Corporal must be familiar with all the duties and responsibilities of a Sergeant.
   6. During the absence of the Squad Sergeant, the Corporal shall see that all assignments are completed accurately and efficiently.
   7. The Corporal shall set an example and demonstrate proper conduct and adherence to Departmental standards by his own behavior.
   8. The Corporal will aid and assist the Sergeant with periodic written evaluations of the members of his squad and will aid and assist the Sergeants with the editing of written reports.

2. Sec. 29–43. Same—Corporals.
   There shall be assigned by the chief of police with the approval of the mayor from time to time from the patrolmen in the police department such number of corporals as the chief with the approval of the mayor shall deem necessary and proper to the performance of two (2) categories of special duty, to wit: (1) To assist their respective sergeants in the supervision and training of the squad and to assume the duties of squad supervisor during the absence or disability of the sergeant or as directed by a superior officer, and (2) To carry out and perform specialty duties, including but not being limited to evidentiary specialty, budget control, identification, and other specialty categories, under the direction of their superior officers and to participate in the training of personnel in their respective specialties. Any such patrolman may be reassigned by the chief of police with the approval of the mayor to the duty of a regular patrolman. (Code 1953, Sec. 28–15; Ord. No. 3888–A, Sec. 2, 1–18–66)
   Sec. 29–44. Supplemental compensation.
   In the event that from time to time any additional or *supplemental compensation shall be* appropriated in the annual budget of the city for service as detective or corporal, those officers assigned to such special duties shall receive such additional or supplemental compensation only during the period of their respective assignments to such special duty. (Code 1953, Sec. 28–16; Ord. No. 3888–A, Sec. 2, 1–18–66) TAMPA, FLA., CODE ch. 29, § 29–43 (1953).

3. TAMPA, FLA., CODE ch. 2, § 2–137 (1953) provides:
   Sec. 2–137. Generally.
   (1) The purpose of the grievance procedure is to establish and maintain harmonious and co-operative working relationships between the city and its employees to assure equitable treatment of employees, and to provide an expeditious means of resolving employee dissatisfaction over circumstances or conditions of employment.

After his reassignment, Moore did not file a grievance; instead, he filed suit alleging a denial of due process in this transfer.

█ Moore's claim to due process under the fourteenth amendment merits consideration only if the department's action deprived him of "liberty" or "property." [4] We conclude that Moore had no property interest in his position as corporal, nor did the circumstances of his transfer deny a liberty interest.

Moore plainly had no property interest in his position as corporal. We look to state law to measure Moore's property claim.[5] The Tampa Code could not be clearer that a corporal serves in that special capacity only at the pleasure of the chief of police and the mayor.[6] Although Moore alleged that corporal assignments were more or less permanent—somewhat akin to the *de facto* tenure alleged by the plaintiff in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)—personnel records reveal that on other occasions the chief of police reassigned corporals to regular patrolman's duties. Moore cites no state law that gives a patrolman a property interest in the position of corporal,[7] and assignment to that position had no effect on Moore's civil service status. We view Moore's position as corporal as no different from that held by a probationary employee: no rea-sonable expectation of continuous employment as a corporal exists that could give rise to a property interest.[8] To accord Moore a due process right to a hearing before reassignment would require the Tampa Police Department to grant hearings before assigning patrolmen to traffic duty or to the radio room. We see no justification for such a requirement.

Neither did Moore's reassignment deny any liberty interest qualifying for due process protection. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court ruled that defamation by a state official alone did not deprive an individual of a liberty interest protected under the due process clause of the fourteenth amendment so as to give rise to a 42 U.S.C. § 1983 action. To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law. *See Paul, supra* at 711–12, 96 S.Ct. 1155. Under this "stigma-plus" test, *see Danno v. Peterson*, 421 F.Supp. 950, 954 (N.D.Ill.1976), we must determine whether the allegations of Moore's failure to respond to the call for aid of another officer, together with his assignment to patrolman's duties, deprived him of a liberty interest protected by due process.

(2) Those matters provided for in the civil service law and the civil service rules pursuant thereto are not subject to this grievance procedure.

(3) The presentation of a grievance request shall be with the assurance that no coercion, discrimination, or reprisals against the employee will follow because of such presentation.

(4) Any employee may designate one or more persons to represent him in the presentation of such grievance or request. However, no such designation shall preclude an employee from presenting his own grievance request. (Code 1953, Sec. 2–69).

4. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

5. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976).

6. *See* n. 2, *supra*. Although Moore argued that the standard operating procedure promised retention of corporal status upon continuing above-average service and that the chief of police had developed certain criteria that he used in deciding whether to retain a corporal, these circumstances only informed the chief of police's discretion; they do not bestow a property interest recognized under state law upon Moore. Hence, there was no material issue of fact raised below. Having no right to retention of corporal status, Moore had no right to retention of the extra pay due those in that status.

7. *See Bishop v. Wood, supra*, 426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690; *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977).

8. *See Bishop v. Wood, supra*, 426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690; *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527, 532 (5th Cir. 1977) (summarizing due process law on probationary employees).

■ Assuming that the report and the assignment stigmatized Moore,[9] his retention of employment negates his claim that he was denied a "liberty." *Paul v. Davis* made it clear that stigma connected with an employment discharge could give rise to a liberty interest,[10] but in his discussion of *Board of Regents v. Roth*, Mr. Justice Rehnquist noted for the *Paul* majority that:

> Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

*Paul v. Davis*, 424 U.S. at 710, 96 S.Ct. at 1165. When an employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that *Paul* reveals does not rise to the level of a liberty interest. The internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment,[11] does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment. *See Sullivan v. Brown*, 544 F.2d 279, 283 (6th Cir. 1976) (transfer of teacher did not deprive her of liberty interest); *Danno v. Peterson, supra* at 954 (transfer of teacher did not deprive her of liberty interest). *Cf. Colaizzi v. Walker*, 542 F.2d 969, 973–74 (7th Cir. 1976) (stigma plus employment discharge gave rise to liberty interest).

The trial court correctly granted summary judgment to the defendants. Moore must look to the city's internal grievance procedures or state law for relief.

AFFIRMED.

---

9. Although the record is far from clear, we assume that Moore's assignment from corporal to patrolman and the reasons therefor were "public" as required in *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684, 692 (1976).

10. *See* 424 U.S. at 709–10, 96 S.Ct. 1155. *See also Codd v. Velger*, 429 U.S. 624, 625–628, 97 S.Ct. 882, 883–884, 51 L.Ed.2d 92, 96–7 (1976).

11. Although Moore was transferred from a position with some supervisory and training responsibilities, he retained his position as a patrolman—a duty that itself entails significant and important activities. *See Danno v. Peterson*, 421 F.Supp. 950, 954 (N.D.Ill.1976). If Moore had been transferred from corporal's duties to janitorial duties, his loss of status might present the type of loss of tangible interest connected with stigmatizing state action that, under *Paul*, could give rise to a liberty interest.