John M. DENNIS, Plaintiff-Appellee,

v.

**S & S CONSOLIDATED RURAL HIGH SCHOOL DISTRICT et al.,
Defendants-Appellants.**

No. 76–3803.

United States Court of Appeals,
Fifth Circuit.

July 31, 1978.

C. Larry Cain, Professional Corp., Jack G. Kennedy, Sherman, Tex., for defendants-appellants.

David M. Stagner, Denison, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

The critical issue raised by this appeal is whether a non-tenured public school teacher with no property interest in the renewal of his teaching contract is entitled to Fourteenth Amendment due process when the school board subjects him to a badge of infamy in the course of refusing to renew his contract. We hold that he is.

## I. THE FACTS

Appellee John M. Dennis was hired by the Board of Trustees of the Sadler & Southmayd Consolidated Rural High School District (S & S) as a science teacher and high school principal for the 1968–1969 school year. Each year thereafter, through the 1972–1973 school year, S & S voted to renew Dennis' contract. At the regular school board meeting in February, 1974, however, S & S voted not to renew the one year contract under which Dennis was employed. Although Dennis was given no advance notice of the Board's February action or the reasons for it, he had previously been involved in several disputes with S & S concerning student discipline. In response to Dennis' request, the S & S Board of Trustees met publicly in March, 1974, to discuss the non-renewal of Dennis' contract. Prior to this meeting, Dennis was not given a list of the charges against him, the reasons for his non-renewal, or the names of persons who had made charges against him. At the meeting, the only reason for non-renewal given by the Board as a body was that the action was in "the best interest of the school". However, individual board members stated that they voted not to renew Dennis' contract, in part, because Dennis "neglected his duties" and "was too inefficient to continue in his position". Two members asserted that Dennis had "a drinking problem". Dennis denied all of the allegations, and later demanded a hearing before the Board in the hopes of clearing his name. The Board granted Dennis a hearing, which was held in public on June 3, 1974, and at which substantially the same

allegations were made against Dennis as at the March meeting. The district court found as its Finding of Fact No. 25 that

> At the June meeting, [Dennis] was represented by an attorney, who was unable to obtain from the Board, in advance of the meeting, (1) the cause of [Dennis'] termination in sufficient detail to fairly enable him to show any error that might have existed or (2) the names and nature of the testimony of witnesses against [Dennis]. Further, he was not accorded a meaningful opportunity to be heard in [Dennis'] defense, since the Board restricted [Dennis'] presentation to about fifteen to twenty minutes, in circumstances of almost complete confusion.

In September, 1974, Dennis obtained employment at the Dillingham Middle School in Sherman, Texas, a school district adjacent to S & S.

On January 22, 1975, Dennis filed suit against S & S under 42 U.S.C. § 1983, alleging that the manner in which S & S decided not to renew his contract deprived him of liberty and property without due process, in violation of the Fourteenth Amendment. After a non-jury trial, the district court held that Dennis had no property interest in continued employment with S & S, and that he suffered no deprivation of liberty in his non-renewal prior to the public airing of charges at the March, 1974, meeting, but that the allegations of a drinking problem made at the March and June meetings subjected him to a "badge of infamy" which violated his liberty interests and entitled him to due process. The court ordered "an administrative hearing before the Board of Trustees that will afford [Dennis] the procedural rights set out in Ferguson v. Thomas", 430 F.2d 852 (5th Cir. 1970), and further ordered that until such a hearing is held, Dennis would remain on the payroll of S & S and receive wages reduced by the amount of his interim earnings derived from employment at Dillingham Middle School.

In this appeal, S & S contends that the district court erred in holding that the actions of the school board violated any pro-tected liberty interest. Significantly, S & S has not argued that either the March or the June, 1974, hearings afforded Dennis procedural due process, assuming the existence of a protected liberty interest. Neither party challenges the district court's holding that Dennis had no property interest in continued employment with S & S.

## II. THE LIBERTY INTEREST QUESTION

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property". *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Because mere non-renewal of a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty, non-tenured teachers "may be discharged for no reason or for any reason not impermissible in itself or as applied". *Kaprelian v. Texas Women's University*, 509 F.2d 133, 139 (5th Cir. 1975). See also *Roth, supra*, 408 U.S. at 574 n.13, 92 S.Ct. at 2708 n.13; *Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1096–97 (6th Cir. 1975), cert. denied, 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); *Shirk v. Thomas*, 486 F.2d 691, 693 (7th Cir. 1973). Nevertheless, as we explained in *Kaprelian* :

> A liberty interest arises  .  .  . when one is publicly subjected to a badge of infamy, such as being "posted" as a drunkard. [*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).] In plaintiff's context, it arises when an employee is able to demonstrate that the State has made a charge "that might seriously damage his standing and associations in his community" or that is of such a nature as to impose "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities". [*Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707.] Such a showing is the employee's voucher of admission into the arena of due process;

without it such questions do not arise. Moreover, to raise a liberty interest such charges must be public ones . . . . [I]n [*Ferguson v. Thomas, supra,*] we recognized a place for the making of private, though damaging, charges against an employee who elects to depart rather than air them. *Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974) also recognizes, however, that where such public charges are denied and discharge is resisted, they may not be the basis of discharge unless due process has been accorded. 509 F.2d at 137–38 (footnotes omitted).

The district court in the instant case relied on *Kaprelian* in holding that Dennis had been deprived of liberty without due process when members of the school board, in explaining why his teaching contract had not been renewed, publicly charged that he had a drinking problem. S & S argues that this reliance on *Kaprelian* was misplaced and that under the recent Supreme Court case, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), decided after *Kaprelian*, Dennis failed to demonstrate any liberty interest.[1] We disagree. The principles of law announced in *Kaprelian* stand unaffected by *Paul v. Davis* and are controlling in this case.

In *Paul v. Davis*, the Supreme Court held that an individual's charge that the State had defamed him, "*standing alone and apart from any other governmental action with respect to him*", did not state a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment. 424 U.S. at 694, 96 S.Ct. at 1157 (emphasis added). The Court reviewed its earlier due process decisions and found a common thread running through each:

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State,

which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. 424 U.S. at 711, 96 S.Ct. at 1165.

Based on its concern that due process not be invoked to protect "reputation alone", we have construed *Paul v. Davis* as establishing a "stigma-plus" test: "To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law". *Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977). We see in this test no conflict with the rule stated in *Kaprelian*: "Nor is it doubtful that [a non-tenured teacher] who is subjected to defacing public charges *in or as a result of the discharge process* is entitled to a due-process hearing at which he can make a fair fight to clear his name". 509 F.2d at 139 (emphasis added).

Essentially, S & S argues that because Dennis had no property interest in the renewal of his contract, i. e., that his right to continued employment is not recognized under Texas law, he failed to satisfy the "plus" of the "stigma-plus" test. However, the Court in *Paul v. Davis* anticipated the situation present in the instant case and unambiguously indicated that defamation in the course of declining to rehire a non-tenured employee *would* satisfy the "stigma-plus" test. In discussing its earlier holding in *Roth, supra,* the Court observed:

While *Roth* recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated

---

1. The district court in this case entered its Findings of Fact and Conclusions of Law on May 4, 1976, approximately six weeks after the

Supreme Court announced its decision in *Paul v. Davis* on March 23, 1976. The district court neither cited nor discussed *Paul v. Davis*.

by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment . . . .. Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. 424 U.S. at 709–10, 96 S.Ct. at 1164–65.

Relying upon this language in *Paul v. Davis,* the Seventh Circuit has rejected the position now advanced by S & S:

> In other words, infliction of a stigma to reputation accompanied by a failure to rehire (or, *a fortiori,* by a discharge) states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment. Moreover, this combination of stigma plus failure to rehire/discharge states a claim even if the failure to rehire or discharge of itself deprives the plaintiff of no property interest within the meaning of the Fourteenth Amendment. We reach this conclusion because on the facts of *Roth* itself the Supreme Court found that the plaintiff respondent had no claim of entitlement to, or property interest in his job. *Roth, supra,* 408 U.S. at 578, 92 S.Ct. 2701. Since the Court in *Paul v. Davis* specifically approved the *Roth* dictum concerning stigma to reputation, it follows that stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunc-*

*tion* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process.

*Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir. 1976), cert. denied, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811. See also *Austin v. Board of Ed. of Georgetown,* 562 F.2d 446 (7th Cir. 1977).

■ We agree with the Seventh Circuit that stigma to reputation in conjunction with a failure to rehire a non-tenured employee states a claim under § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process. Such a conclusion is inescapable in light of the Supreme Court's dictum in *Roth,* as reaffirmed in *Paul* and subsequent cases.[2] Additionally, our holding comports with the rationale underlying *Paul v. Davis.* The Court in *Paul* expressly rejected the theory that every defamation of a private citizen by the government violates a liberty interest sufficient to invoke the protection of the Due Process Clause. Rather, the Court indicated that the existence of a liberty interest depended upon the presence of a special relationship between the government and the individual in specific contexts. Where, for example, the State has conferred a right upon certain citizens—the right of adults to purchase liquor in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) or the right of licensed drivers to operate a vehicle on state highways in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)—it may not alter or extinguish that right without due process. Similarly, when the government employs an individual, it may not terminate the relationship in a manner which "might seriously

---

**2.** In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Court held that a non-tenured employee is not entitled to due process when his termination is based upon false, stigmatizing allegations *which have not been publicly aired.* Without public disclosure of the reasons for the discharge, the Court reasoned, the employee remains as free as before to seek another job. 426 U.S. at 348, 96 S.Ct. at 2079. Similarly, in *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the Court held that to state a claim for denial of due process, a discharged, non-tenured employ-

ee must allege that the charges against him are false. Citing *Roth* and *Bishop,* the Court stated: "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required". Id. at 628, 97 S.Ct. at 884.

In *Moore v. Otero,* 557 F.2d 435, 438 (5th Cir. 1977), we stated: "*Paul v. Davis* made it clear that stigma connected with an employment discharge could give rise to a liberty interest . . . .."

damage his standing and associations in his community" or foreclose "his freedom to take advantage of other employment opportunities" without affording him "a due process hearing at which he can make a fair fight to clear his name". *Kaprelian, supra*, 509 F.2d at 137–139. It is the individual's status as a government employee and not his property interest in continued employment which furnishes the "plus" that raises reputation to the level of a constitutionally protected liberty interest. Under our holding, of course, the State remains free to terminate or decline to rehire a non-tenured employee for no reason at all or for stigmatizing, even false reasons privately stated.

■ S & S also argues that it did not deprive Dennis of a liberty interest because he was able to secure employment in another school district. In support of this contention, S & S cites *Moore v. Otero, supra*, in which we held that "[w]hen an employee retains his position [or is transferred to another position] even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that *Paul* reveals does not rise to the level of a liberty interest". 557 F.2d at 438. Because the employee in *Moore* continued to work, albeit in a different capacity, for the same employer, that case has little relevance to the instant case.[3] Here, Dennis' employment with S & S was terminated; in no sense did he "continue to be an employee" of S & S.[4] Only after his ties with S & S were severed did he seek and eventually find employment elsewhere.

■ In urging that we extend *Moore* to cases in which a terminated employee has been able to secure independent employment, S & S advocates too restrictive an interpretation of *Roth*. Although the Court in *Roth* stated that a liberty interest might be implicated where the stigma inflicted upon an employee "foreclosed his freedom to take advantage of other employment opportunities", 408 U.S. at 573, 92 S.Ct. at 2707, it never intimated that such foreclosure was an indispensable element in demonstrating a liberty interest. Indeed, the Court pointed out that due process would have been required in *Roth's* case had the "charge against him [been one] that might seriously damage his standing and associations in his community . . . for example, that he had been guilty of dishonesty, or immorality". Id. Under this alternate test, the existence of a liberty interest depends upon the nature of the charge used as a ground for termination and not upon the actual consequences of the charge. *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365 (9th Cir. 1976).

In this case, two members of the school board stated in public that Dennis' teaching contract was not renewed because he had a "drinking problem". Dennis has consistently denied this allegation and the district court found as a fact that it was false in that Dennis did not consume intoxicants to excess. We think it self-evident that the allegation of "a drinking problem" made in connection with the refusal to renew a teacher's contract is one "that might seriously damage his standing and associations in his community", *Roth, supra*, and which calls into question his "good name, reputation, honor, or integrity". *Wisconsin v. Constantineau, supra*, 400 U.S. at 437, 91 S.Ct. at 510. Furthermore, in their testimony during the trial in this case, several board members and a member of the public present at the March, 1974, meeting admitted that the charge leveled against Dennis was likely to blacken his name in the conservative and closely-knit community of Sadler-Southmayd. T. 245–46 (Monk); T. 401–2, 405 (Patterson); T. 435 (Moore); T.

---

3. *Moore* expressly does not apply to an internal transfer which "constitutes such a change of status as to be regarded essentially as a loss of employment". 557 F.2d at 438. For other "transfer" cases see *Sullivan v. Brown*, 544 F.2d 279 (6th Cir. 1976); *Danno v. Peterson*, 421 F.Supp. 950 (N.D.Ill.1976).

4. Our holding in *Moore* was based upon a passage from *Paul v. Davis*: "Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee". 424 U.S. at 710, 96 S.Ct. at 1165.

**344**

225–26 (Darrell Williams, spectator at March meeting). Under these circumstances, we find it irrelevant that Dennis was able to secure employment in another community.

### III. THE REMEDY

■ In its order of September 8, 1976, the district court provided, in part, that the school board afford Dennis a hearing at which he would have the opportunity to clear his name, "that [Dennis] be retained on the payroll of defendant, until such hearing is held", and that he be entitled to back pay reduced by interim earnings. We agree with S & S that those portions of the court's order concerning retention on the payroll and entitlement to back pay are contrary to law and must be reversed.

"Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop,* the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" *Codd v. Velger, supra,* 429 U.S. at 627, 97 S.Ct. at 883–84. The school board in this case was under no obligation to rehire Dennis, regardless of whether any or all reasons offered to explain his non-retention proved to be false. The purpose of the due process hearing to which Dennis was entitled was not to afford an opportunity to recapture his previous employment but simply to "clear his name". *Roth, supra,* 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12. Because Dennis' right to due process in this case does not encompass the right to continued employment with S & S, neither retention on S & S' payroll nor entitlement to back pay are appropriate remedies. We thus reverse the district court as to its Conclusion of Law No. 11, entered on May 4, 1976, and subsections (2), (3), and (4) of its Judgment entered on September 8, 1976.

In all other respects the judgment of the district court is affirmed.

AFFIRMED IN PART; REVERSED IN PART.