Johnny L. SPARKS, Plaintiff,

v.

The CITY OF ATLANTA; Maynard H. Jackson, Mayor of the City of Atlanta; Severally and Jointly, Defendants.

Civ. A. No. C78–2042A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 28, 1980.

John D. Allen, Columbus, Ga., for plaintiff.

Roy Mays, III, Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

This case was tried to the Court without a jury on July 7, 1980. The findings of fact and conclusions of law below are made pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

1. At all times relevant, plaintiff Johnny L. Sparks was a Captain in the Atlanta Bureau of Police Services.

2. In 1977, the Mayor of Atlanta, the Honorable Maynard Holbrook Jackson, became aware of allegations of widespread cheating on the 1975 police promotional exams.

3. On November 21, 1977, Mayor Jackson appointed two outside attorneys, Mr. Felker Ward and Mr. Randolph Thrower, to conduct an impartial investigation of the allegations. Defendants' Exhibits # 3 and 4.

4. On February 20, 1978, Messrs. Ward and Thrower released their report. Defendants' Exhibit # 7.

5. Based on this report, *see* pages 150–53 of Defendants' Exhibit # 7, the City Attorney, at the Mayor's direction, *see* Plaintiff's Exhibit # 2, brought charges against plaintiff. The complaint alleged that plaintiff had failed to be truthful during the Ward–Thrower investigation, and had attempted to obstruct the investigation. Plaintiff's Exhibit # 1.

6. In May, 1978, a hearing before a Disciplinary Hearing Panel was held on the charges against plaintiff. The panel had five members: Deputy Director J. H. Amos, Chairman; Deputy Director Clinton Chaffin; Deputy Director C. H. Childers; Major W. W. Holley; and Captain Herman Griner. The report of the panel on Captain Sparks, dated June 7, 1978 and signed by all panel members, concluded:

> The Disciplinary Hearing Panel Members, after taking all of the evidence into consideration and considering the serious doubts in the Panel members' minds, by a unanimous vote in each instance, found Captain J. L. Sparks not guilty of violating the following Rules:
>
> > Rule No. 614, Subsections 4, 5, 9, 10, 12, 15, 17, 29, 34 and 40
> >
> > Rule No. 1.25
> >
> > Rule No. 1.32
> >
> > Rule No. 1.39
> >
> > Rule No. 1.42.1
> >
> > Rule No. 1.69
>
> The Panel members, by a three (3) to two (2) vote found Captain J. L. Sparks not guilty of violating the following Rule:
>
> > Rule No. 1.38
>
> The Disciplinary Hearing Panel members recommend that no disciplinary action be taken against Captain J. L. Sparks.

7. Plaintiff, prior to the hearing, received notice of the hearing, a copy of the complaint giving the charges against him, and a list of adverse witnesses. He was represented by counsel at the hearing, allowed to confront hostile witnesses, and testified on his own behalf.

8. On June 22, 1978, in the Bureau of Police Services *Daily Bulletin*, it was announced that "[b]y order of Mayor Maynard Jackson, the following actions are effective immediately: . . . Captain J. L. Sparks–Suspended 30 days." Plaintiff received notice of his suspension, although he first learned of his suspension through the news media.

9. Mayor Jackson testified at trial that he neither attended the disciplinary hearing on the charges against plaintiff, nor read the transcript of the proceedings. The Mayor testified that he drew no conclusion from the three–page report submitted by the panel; rather, he reviewed both the hearing panel's report and the Ward–Thrower report in reversing the panel's finding and deciding to impose punishment on plaintiff.

10. Plaintiff served his full period of suspension without pay. He testified at the trial that he felt the suspension had hurt his record as a career police officer and his chances for promotion; that he had to borrow money; and that he and his family had been affected and embarrassed by the scandal. No evidence of any out–of–pocket expenses or other actual damages was introduced. Plaintiff testified that he had not previously been involved in any police disciplinary proceedings. Plaintiff also testified that he felt he had been passed over for the privilege of attending the FBI Academy. However, testimony from other witnesses made it clear that this privilege was granted to just a few police officers a year, and that plaintiff had not been passed over as a result of the suspension. Moreover, plaintiff will be attending the FBI Academy later in 1980. The Chief of the Bureau of Police Services, Mr. George Napper, Jr., testified that plaintiff "continues to be a fine police officer." The Court finds that plaintiff has suffered no damage to his career.

11. By letter dated July 17, 1978, plaintiff, through his attorney, notified Mayor Jackson that he intended to appeal the suspension and requested the findings of the hearing panel. Plaintiff's Exhibit # 6.

12. By letter dated July 24, 1978, City Attorney Ferrin Mathews, responding for the Mayor, declined to produce the findings. Plaintiff's Exhibit # 7.

13. On August 8, 1978, plaintiff was notified by telephone to appear before the Civil Service Board on August 10, 1978 to present his appeal. Plaintiff's Exhibit # 9. The hearing was continued over. Had the hearing been held, it would have been a *de novo* hearing.

14. On September 15, 1978, in the Bureau of Police Services *Daily Bulletin*, the following announcement appeared: "Effective September 12, 1978–Captain J. L. Sparks' suspension for 30 calendar days has been rescinded and he will receive back pay." Defendants' Exhibit # 9.

15. Plaintiff filed this suit against the Mayor of Atlanta, Maynard Jackson, and the City of Atlanta, on November 28, 1978.

16. Due to bureaucratic confusion in the Bureau of Police Services, plaintiff did not receive his back pay until early December of 1978. The reason for the delay was set forth in a letter accompanying the check.

17. The only evidence introduced at trial concerning publicity surrounding the cheating scandal was as follows:

(a) Mayor Jackson testified that he released the Ward–Thrower report at a press conference, at which he also released Executive Order 78–2, Plaintiff's Exhibit # 2, directing the City Attorney to draw up complaints against a number of police officers, including plaintiff;

(b) Mayor Jackson testified that the disciplinary actions taken against plaintiff and other implicated officers (*see* Plaintiff's Exhibit # 5) were also made public; and

(c) Plaintiff Sparks testified that he learned of both his suspension and the rescinding of the suspension through the news media.

No other evidence concerning publicity or proof of defamation was produced.

18. No evidence of malice or ill will on the part of defendant Jackson was adduced at trial; nor may any fairly be inferred from defendant Jackson's actions, standing alone.

## CONCLUSIONS OF LAW

■ Plaintiff claims that the facts found above state a cause of action under 42 U.S.C. § 1983 [1] in that plaintiff was deprived of his property right to continued employment without being accorded due process of law, and in that plaintiff was deprived of his liberty interest in his good reputation as a police officer, also without being accorded due process of law by defendants.[2]

## A. PROPERTY RIGHT

Stated in terms most positive to plaintiff, the property right plaintiff was deprived of was his right to continuous employment and salary during the 30 day period of his suspension, which he served in full. Approximately four months after the salary for the month of suspension would ordinarily have been due, plaintiff received the amount in full, along with an explanation for defendant City of Atlanta's delay in reimbursing plaintiff. Plaintiff testified that he had to borrow money during the period he was deprived of the salary, but gave no testimony concerning whom he borrowed the money from, when he borrowed the money, how much he borrowed and what interest, if any, was required by the lender. Plaintiff testified to no other property interest he was deprived of; nor was there any other damage flowing from the loss of his property right. Assuming that defendants failed to accord plaintiff due process of law in

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. It is not entirely clear from a reading of plaintiff's amended complaint, May 2, 1980, whether plaintiff intended to sue defendants under a state law defamation theory in addition to his § 1983 claims. Such a state law claim would fail, however, since state law provides a privilege for statements made bona fide in the performance of a public duty. Ga.Code Ann. § 105–709(1). Defendant Jackson's statements were thus privileged under state law.

depriving him of this property right,[3] this Court nevertheless concludes that any harm to plaintiff was cured by the rescinding of his suspension and defendants' payment of plaintiff's withheld salary.

■ In *Glenn v. Newman*, 614 F.2d 467, 473 (5th Cir. 1980), the Court of Appeals found that a "claim of pretermination due process violations was cured by the subsequent due process hearing." In the instant case, the Mayor reversed his decision without a hearing and attempted to put plaintiff in the same position he would have been in had he never been suspended.[4] Plaintiff's suspension was 'rescinded.' The word rescind is ordinarily used in the context of contract discussions. It means

> To abrogate, annul, avoid, or cancel a contract; particularly, nullifying a contract by the act of a party. To declare a contract void in its inception and to put *an end to it as though it never were . .* Not merely to terminate it and release parties from further obligations to each other but to *abrogate it from the beginning and restore parties to the relative positions which they would have occupied had no contract ever been made.*

*Black's Law Dictionary* (5th ed. 1979) (emphasis added) (citations omitted). Thus, defendants attempted to wipe the slate clean, to make it as if plaintiff had never been suspended. It requires *no leap of reasoning* to say that if a deprivation of property without due process can be cured by a subsequent due process hearing, then it can be cured by defendants' reversing course and rescinding plaintiff's suspension and paying him his back pay *without* a hearing. In terms of his property right, plaintiff could have received no more favorable outcome than that (having the suspension rescinded and receiving back pay) from a due process hearing. The only damages to which plaintiff is entitled being back pay, *see Glenn, supra,* 614 F.2d at 473, defendants are entitled to judgment on this claim.

## B. LIBERTY INTEREST

Plaintiff's second claim is that defendants' suspension of him, coupled with press announcements to that effect and in connection with the cheating scandal, deprived him of a liberty interest in his reputation without due process. However, the Supreme Court of the United States

> has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.

*Paul v. Davis,* 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976) (citation omitted). The Fifth Circuit has elaborated on the "stigma–plus" test of *Paul v. Davis,* in which

> the Supreme Court ruled that defamation by a state official alone did not deprive an individual of a liberty interest protected under the due process clause of the

---

**3.** Plaintiff argues not that the hearing failed to comply with due process of law, but that Mayor Jackson denied plaintiff due process in reversing the decision of the hearing panel (not guilty as to all charges) and imposing punishment. Consistent with due process, the Mayor would have been privileged to reverse the panel on the basis of the record developed by the panel; and the Court could then readily determine whether or not there existed substantial evidence in the record to support the Mayor's decision. However, the Mayor testified at the trial that he drew no conclusion based on the panel's report, but rather relied on the Ward - Thrower Report, which was not part of the record, in concluding that plaintiff had lied and tried to thwart the investigation and was *thus* deserving of punishment. For the ultimate decision-maker here to have gone outside the record in rendering a decision made it impossi-

ble for plaintiff to confront the witnesses against him.

The Court, notes, however, that had plaintiff chosen to pursue his administrative appeal, he would have been given a *de novo* hearing by the Civil Service Board, which the Court assumes would fully comply with the requirements of due process of law.

**4.** The Bureau of Police Services *Daily Bulletin* for September 15, 1978 contained the following Notice:

> *Effective September 12, 1978*
> Captain J. L. Sparks' suspension for 30 calendar days has been rescinded and he will receive back pay.

Defendants' Exhibit # 9. Plaintiff testified he learned of the action through the news media.

fourteenth amendment so as to give rise to a 42 U.S.C. § 1983 action. To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.

*Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977).

■ Thus, under this "stigma–plus" test, this Court must determine whether any alleged defamation, together with the property interest deprivation, amounted to deprivation of a liberty interest protected by due process. *Moore v. Otero, supra.* This Court concluded above that any property deprivation was cured by defendants' rescinding of the suspension and giving plaintiff his back pay. That being the case, there is no substantial *"plus"* to which the "stigma" could attach. To paraphrase *Moore v. Otero*: assuming that plaintiff was stigmatized, his retention of employment negates his claim that he was denied a 'liberty.' The Supreme Court in *Paul v. Davis*

> made it clear that stigma connected with an employment discharge could give rise to a liberty interest, but in his discussion of *Board of Regents v. Roth*, [408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548], Mr. Justice Rehnquist noted for the *Paul* majority that:

>> Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

> *Paul v. Davis*, 424 U.S. at 710, 96 S.Ct. at 1165. When an employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that *Paul* reveals does not rise to the level of a liberty interest. The internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional

loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment. *See Sullivan v. Brown*, 544 F.2d 279, 283 (6th Cir. 1976) (transfer of teacher did not deprive her of liberty interest); *Danno v. Peterson, supra*, [D.C., 421 F.Supp. 950] at 954 (transfer of teacher did not deprive her of liberty interest). *Cf. Colaizzi v. Walker*, 542 F.2d 969, 973–74 (7th Cir. 1976) (stigma plus employment discharge gave rise to liberty interest).

*Moore v. Otero, supra,* 557 F.2d at 438 (citations omitted). This Court concludes that any 'stigma' suffered plus the suspension and subsequent rescinding of the suspension gave rise to no liberty interest protected by due process of law. Accordingly, defendants are entitled to judgment on this claim.

## CONCLUSION

For the reasons stated above, defendants are entitled to judgment in their favor. Each side shall bear its own costs.

IT IS SO ORDERED.