TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00645-CV







Mark Trostle and Carroll Draper, Appellants



v.



Susan Combs, Commissioner of Agriculture and in her Individual Capacity; Donnie

Dippel, Kathy Reed, Sara Jo Snodgrass, Raette Hearne, Charlie Thomas, Larry

Beauchamp, and Martin Hubert, in their Official and Individual Capacities;

and Lisa Woods and Karen Macomb, in their Official Capacities, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 99-09869, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING





O P I N I O N




 Appellants Mark Trostle and Carroll Draper appeal from the take-nothing summary
judgment rendered against their claims that the appellees damaged them while demoting them at the
Texas Department of Agriculture ("the Department"). Trostle and Draper contend that they were
deprived of property interests, liberty interests, and due process by appellees acting in the following
capacities: Susan Combs, Commissioner of Agriculture and in her individual capacity; Donnie
Dippel, Kathy Reed, Sara Jo Snodgrass, Raette Hearne, Charlie Thomas, Larry Beauchamp, and
Martin Hubert, in their official and individual capacities; and Lisa Woods and Karen Macomb, in
their official capacities. Trostle and Draper contend that Combs slandered them per quod and per
se, that several appellees intentionally inflicted emotional distress upon them, and that the appellees
conspired to inflict emotional distress and humiliation upon them. Appellees moved for summary
judgment, contending that their actions are protected by the at-will employment doctrine and do not
violate the constitution or any of the laws alleged. The court granted the motion without stating a
basis. We will affirm the judgment.


BACKGROUND


 Trostle and Draper are longtime employees of the Department. Trostle was the
director of the pesticide-registration program and Draper was a pesticide-registration specialist. Both
had good employment records before the incident leading to their demotion.

 In late 1998, Trostle was invited by his friend, Dr. J.R. Moody, to hunt deer on a lease
in Concho County. Trostle believed Moody, an employee of Zeneca Ag Products, owned the lease. 
Trostle invited Draper. Appellants provided their own transportation, toiletries, food, and bedding. 
They did not shoot or kill any game while on the lease.

 On February 11, 1999, Trostle and Draper were questioned by Donnie Dippel, their
immediate supervisor, and Larry Beauchamp, the Department's ethics officer, about the hunting trip. 
Dippel and Beauchamp told appellants that the trip violated the Department's ethics policies and the
penal code. Dippel and Beauchamp further stated that appellants must sign individual statements
about the trip or face termination and prosecution. Five days later, they were pressed to sign
individual statements prepared by Beauchamp admitting that the lease was owned by Zeneca, a
company regulated by the Department. Both appellants signed such statements.

 On February 19, 1999, appellee Martin Hubert, the deputy commissioner of
agriculture, told appellants they must quit, be fired, or agree to demotion, probation, and salary
reduction. Hubert reiterated the Department's position that the hunting trip constituted acceptance
of a benefit from a company that the Department regulated--a violation of Texas Penal Code section
36.08 and the Department's ethics policies. Appellants signed documents detailing the terms of their
demotion and probation. In conjunction with their demotions, Trostle lost $635 in monthly salary
and Draper lost $384 in monthly salary.

 Appellants later learned that the lease is held in the name of another Zeneca employee
who, Beauchamp said he learned, used funds from Zeneca to pay for the lease.

 Many people outside the Department learned of the accusations against appellants. 
Appellants specifically allege that Combs told Chris Shields, the executive director of the Texas
Aerial Applicator Association, that appellants had taken a bribe from Zeneca.

 Appellants sued, claiming that appellees deprived them of their interests in property,
liberty, and due process. (1) They also claimed that appellees intentionally inflicted emotional distress
on them, and that Combs slandered them. Appellees filed a motion for a no-evidence summary
judgment that was denied except as to the claims for intentional infliction of emotional distress.

 Appellees later filed a combined no-evidence and traditional motion for summary
judgment against the remaining claims. In response, appellants filed affidavits describing their work
histories, the lack of process in their demotions, the spread of rumors about their demotions, and the
effect they believed the rumors and their demotions had on their job prospects within and outside
the Department. The district court granted the appellees' second motion for summary judgment
without stating a basis. In the course of granting the motion, the court sustained objections to
appellants' affidavits, and denied a hearsay objection to the affidavit of appellants' former counsel
Jason Nassour submitted for the purpose of attempted impeachment of Shields.


DISCUSSION


 Appellants raise seven issues on appeal. They contend that the district court erred by
concluding that they did not show either that they have a property interest in their employment and
retirement benefits or that appellees violated their liberty and property interests. Appellants also
argue that the district court erred by concluding that they did not produce evidence of a genuine issue
of material fact concerning their claims that appellees engaged in a civil conspiracy or slandered
appellants. Appellants further contend that the district court erred by granting summary judgment
on the basis of immunity. Finally, appellants argue that the district court erred by sustaining
appellees' objections to their evidence submitted in support of their response to appellees' second
motion for summary judgment.

 The appellate standards for reviewing a summary judgment are well established. The
party moving for summary judgment has the burden of showing no genuine issue of material fact
exists and it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment
must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and
conclusively establish each essential element of an affirmative defense. See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979); Zep Mfg. Co. v. Harthcock, 824 S.W.2d
654, 657 (Tex. App.--Dallas 1992, no writ).

Property interest

 Appellants contend that they have a property interest in their employment and
retirement benefits at the Department. They acknowledge that employment in Texas is at will, but
contend that the Department's disciplinary policy establishing methods for demoting or firing
employees created property interests in their continued employment, retirement benefits, and the
processes described in the Department's policy manual. They point to language requiring all
employees to abide by the manual's policies, which include particular processes for grievances and
adverse employment decisions.

 A protected property interest in employment, process, or benefit exists only when an
employee has a "legitimate claim of entitlement" to the employment, process, or benefit. See Board
of Regents v. Roth, 408 U.S. 564, 576-77 (1972). The employee must have more than an abstract
need, desire, or unilateral expectation of it. Id. at 577.

 The presumption that employment in Texas is at will is difficult to overcome.
"[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or
the employee for good cause, bad cause, or no cause at all." Montgomery County Hosp. Dist. v.
Brown, 965 S.W.2d 501, 502 (Tex. 1998). A manual alters the at-will status only if it contains
language that specifically and expressly limits the employment relationship and curtails the
employer's right to terminate the employee. Texas State Employees Union v. Texas Workforce
Comm'n, 16 S.W.3d 61, 66 (Tex. App.--Austin 2000, no pet.). A disclaimer in an employee
handbook negates any implication that a personnel procedures manual places a restriction on the
employment at-will relationship. Federal Exp. Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex.
1993). In that case, the court found that any implication of a restriction on the at-will status of an
employee in the company personnel manual was negated by language in that manual stating that "the
policies and procedures set forth in this manual provide guidelines for management and employees
during employment, but do not create contractual rights regarding termination or otherwise." Id.

 Similarly, the Department's manual contains ample and repeated denials that it
restricts the Department's ability to fire or demote employees at will. The manual contains a chapter
entitled "employment at will" that contains the following policy statement.


 The Texas Department of Agriculture adheres to the common-law doctrine of at-will
employment. This means that once employed with the department, you serve at the
pleasure of the commissioner. The department's policies, manuals, and procedures
are subject to change and do not constitute terms of an express or implied
employment agreement. No employee of the department has the authority to enter
into a contractual agreement regarding employment with any other employee of the
department.


The chapter setting out the disciplinary process contains a section entitled "employment at will" that
repeats the first two sentences quoted above, then states, "No disciplinary action is a prerequisite for
other disciplinary action, including termination." The manual then sets out the process that managers
"may" use, including discussion, oral and written warnings, and probation. Next, in a paragraph
entitled "variations," the manual states:


The above identified process may be varied or totally eliminated depending upon the
severity and/or recurring nature of the employee's behavior. It is also possible to use
suspensions without pay and demotions in addition to, or in place of, these steps. 
Committing a criminal or unethical offense may be grounds for immediate
termination.


The chapter setting out the grievance process closes with a paragraph in bold print that states,
"Nothing in this policy should be construed as creating a contract of employment or any property
right in employment. Notwithstanding the procedures set forth in this policy, employment at the
Texas Department of Agriculture may be terminated at will."

 The manual's repeated disclaimers show unequivocally that the policies and
procedures therein did not alter the at-will employment status of appellants. See Dutschmann, 846
S.W.2d at 283. We hold that appellants therefore did not have a protected interest in their jobs. 
They may have an interest in the employment benefits they had accrued, but there is no indication
that those benefits were affected by the demotions. Appellants lack a protected interest in benefits
they speculate they would have accrued if they had not been demoted. See Roth, 408 U.S. at 577.


Liberty interest

 Appellants contend they were deprived of a liberty interest. Appellants must show
that they were discharged without meaningful process, that they requested and were denied a chance
to clear their names, and that false, defamatory charges were made public in connection with the
discharge. Rosenstein v. The City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989).

 Appellants, however, were demoted, not discharged. See Paul v. Davis, 424 U.S.
693, 710 (1976). They contend that a question remains regarding whether their demotions were
significant enough to be a discharge under the standard. "The internal transfer of an employee,
unless it constitutes such a change of status as to be regarded essentially as a loss of employment,
does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest
meriting protection under the due process clause of the fourteenth amendment." See Moore v. Otero,
557 F.2d 435, 438 (5th Cir. 1977) (affirming summary judgment finding no deprivation of liberty
interest when corporal returned to patrolman status) (footnote 11 omitted). The court wrote:


Although Moore was transferred from a position with some supervisory and training
responsibilities, he retained his position as a patrolman--a duty that itself entails
significant and important activities. If Moore had been transferred from corporal's
duties to janitorial duties, his loss of status might present the type of loss of tangible
interest connected with stigmatizing state action that, under Paul, could give rise to
a liberty interest. 



Id. n.11 (citation omitted).

 The facts of this case track those of Moore. Although neither appellant here was
fired, both lost income; Trostle lost $635 per month and Draper lost $384 per month. Trostle lost
his supervisory duties and became a subordinate in programs he once supervised. He lost the use
of e-mail and the locks on his doors were changed. Draper was assigned statistical duties with which
he had no experience and was moved to another building. These facts do not approach the level of
demotion described in Moore. See id. Appellants did not lose a liberty interest.


Due process

 Appellants complain that they were denied due process when they were demoted
without the procedures described in the Department's manual. As discussed above, the "mandatory"
language of the manual was overcome by the manual's repeated denials that the procedures therein
were mandatory or altered the at-will status of the Department's employees. "[T]he strictures of due
process apply only to the threatened deprivation of liberty and property interests deserving the
protection of the federal and state constitutions." Spring Branch ISD v. Stamos, 695 S.W.2d 556,
561 (Tex. 1985); see also Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Because we have
concluded that appellants were not guaranteed any process by the manual and were not deprived of
liberty or property interests, we conclude that they were not deprived of any process due them.


Slander

 Appellants complain that appellees slandered them by telling people outside the
Department untruths about the circumstances of their demotion. A slander claim requires proof that
the defendant published a statement that defamed the plaintiff while acting with negligent disregard
of whether the statement was true. See WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex.
1998). Appellants complain specifically only about a statement attributed to Combs.

 Appellants complain generally of slander by unspecified appellees. Trostle avers that
people inside and outside the agency and state government approached him with knowledge of the
accusations against him, even though he had not discussed the accusations. There is no evidence,
however, of how these individuals gained knowledge of the accusations. There is no evidence that
appellees made the statements that gave these unnamed individuals the knowledge. Summary
judgment in favor of all appellees against these nonspecific allegations was appropriate.

 Appellants complain specifically that appellee Combs slandered them by telling
Shields that appellants had taken a bribe from Zeneca. They support this allegation primarily with
an affidavit from Jason Nassour, their former attorney. He averred:


In conjunction with my efforts to represent Trostle and Draper I had a telephone
conversation with Chris Shields. Mr. Shields told me that he had a telephone
conversation with Susan Combs and had been told that Trostle and Draper committed
a crime, a Class A misdemeanor, for accepting a bribe. He further read the bribery
[statute] to me over the telephone and indicated that Susan Combs had reported this
matter to the District Attorney's office but they were holding off prosecuting this
matter at Susan Combs' request.



Appellants also refer to Shields's deposition testimony about a telephone conversation he had with
Combs in January or February of 1999. Shields said,


The basic gist of the conversation was that she understood that I had called her office
inquiring about the Trostle matter. And I said, yes ma'am that's why I was calling. 
I got a couple of phone calls about it and I was wanting to try to figure out, you
know, what exactly was going on with that. And what she basically said to me was
that she had deliberately and carefully and appropriately dealt with a disciplinary
action involving Mark Trostle.


And I said basically thank you very much for that information, and that was basically
the conversation. . . .


She did not, to my knowledge, say anything--to my recollection, say anything
specifically about the facts of the case or what was involved or anything. 



Shields testified that he learned more details of the situation from others, including Moody, Trostle's
friend who invited him on the hunting trip. 

 Appellees objected to Nassour's affidavit at trial contending, among other things, that
it was tainted by an offensive use of attorney-client privilege, that the portions pertaining to what
Shields told Nassour that Combs said were double hearsay, and that Nassour had no personal
knowledge of the Shields-Combs conversation. In ruling on these objections to Nassour's affidavit
and to affidavits by Trostle and Draper, the district court wrote the following:


The Court sustains all of Defendants' objections to the affidavit of Plaintiff Trostle,
and sustains all of Defendants' objections to the affidavit of Plaintiff Draper. 
Further, the objection to the affidavit of Jason Nassour with respect to the hearsay
objection is overruled for the purpose of attempted impeachment of Chris Shields.



The judgment concludes with a clause denying all relief not expressly granted.

 Because the only evidence that Combs slandered appellants appears in Nassour's
affidavit, the competence of the affidavit is critical to the viability of appellants' claims. Affidavits
must be made on personal knowledge. Tex. R. Civ. P. 166a(f). The mere recitation that the affidavit
is based on personal knowledge is inadequate if the affidavit does not positively show a basis for
such knowledge. Radio Station KSCS v. Jennings, 750 S.W.2d 760, 761-62 (Tex. 1988). When the
substance of an affidavit reveals that it was not made on personal knowledge, the affidavit is not
competent summary-judgment evidence. Dailey v. Albertson's, Inc., 83 S.W.3d 222, 227 (Tex.
App.--El Paso 2002, no pet.); see also Bauer v. Jasso, 946 S.W.2d 552, 557 (Tex. App.--Corpus
Christi 1997, no writ) (lack of personal knowledge is substantive defect). But see El Paso
Associates, Ltd. v. J.R. Thurman & Co., 786 S.W.2d 17, 19 (Tex. App.--El Paso 1990, no pet.)
(hearsay is admissible and competent evidence unless properly objected to); see also Rizkallah v.
Conner, 952 S.W.2d 580, 585 (Tex. App.--Houston [1st Dist.] 1997, no writ) (lack of personal
knowledge is defect of form); Dolenz v. A_ B_, 742 S.W.2d 82, 83 n.2 (Tex. App.--Dallas 1987,
writ denied).

 Nassour's affidavit makes it plain that he had no personal knowledge of the
defamatory statements Combs allegedly made. She did not make the statements to him and he did
not overhear the conversation between her and Shields; Nassour avers that he learned of Combs's
remarks through Shields's recounting of the conversation. Combs objected and asserts on appeal
that Nassour's statements are double hearsay. The district court, while not expressly sustaining this
objection, sustained other objections and then overruled the double-hearsay objection "for the
purpose of attempted impeachment of Chris Shields." We are concerned, not with the impeachment
of Shields, but with whether the record contains any competent evidence that Combs made
defamatory statements. We hold that Nassour's affidavit, made without personal knowledge of
Combs's remarks and subject to a hearsay objection, is not competent evidence that she made those
remarks. But see Dolenz, 742 S.W.2d at 83 n.2 (affidavit recounting conversations is competent
summary-judgment evidence when not objected to).

 Because there is no competent evidence that Combs made defamatory remarks, the
district court did not err by granting summary judgment against the slander claim.


Conspiracy

 Appellants allege that appellees engaged in a conspiracy to inflict emotional distress
and humiliation. They argue on appeal that appellees conspired to deny them due process by failing
to follow the Department's procedures outlined in the policy. "A civil conspiracy is generally
defined as a combination of two or more persons to accomplish an unlawful purpose, or to
accomplish a lawful purpose by unlawful means. It is not the agreement itself, but an injury to the
plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of
action." Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 925 (Tex. 1979). Because none of
the actions allegedly conspired upon supports a cause of action, summary judgment is also
appropriate against the claim that appellees conspired to commit those actions.


Remaining issues

 Because we have found that summary judgment is appropriate against all of
appellants' causes of action, we need not consider whether appellees were immune from liability in
these causes of action. Similarly, because the information in appellants' affidavits excluded by the
district court does not alter our conclusions regarding the issues considered above, we need not
consider whether the district court erred by sustaining objections and excluding the information.


CONCLUSION


 Having considered all necessary issues and resolved them in favor of the judgment,
we affirm the judgment.



 

 Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: April 3, 2003

1. Appellants also sued the Department and Shields. The Department was dismissed and
Shields was nonsuited. Appellants do not appeal the judgment as to the Department and Shields.