891 F.2d 864
 52 Empl. Prac. Dec. P 39,567
 Mary Marie FAUCHER, M.D., and Milstead Anesthesia, P.C.,
Plaintiffs-Appellants,
v.
Thomas L. RODZIEWICZ, M.D. Individually and as Clinical
Director for the Department of Anesthesia of Rockdale County
Hospital, Archer A. Rose, individually and as Executive
Director of Rockdale County Hospital, The Rockdale County
Hospital Authority, d/b/a Rockdale Hospital, Defendants-Appellees.
 No. 88-8880.
 United States Court of Appeals, Eleventh Circuit.
 Jan. 9, 1990.
 
 Randolph A. Mayer, Mayer, Nations and Perkerson, William W. Calhoun, Atlanta Ga., for plaintiffs-appellants.
 Gary Flack, Atlanta, Ga., for Thomas L. Rodziewicz.
 Anne S. Rampacek, Kevin E. Grady, Alston and Bird, Atlanta, Ga., for Thomas L. Rodziewicz, Rockdale County Hosp. and Archer A. Rose.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH, Circuit Judge, HILL*, Senior Circuit Judge, and POINTER**, Chief District Judge.
 HILL, Senior Circuit Judge:
 
 
 1
 Dr. Mary Marie Faucher was the only anesthesiologist on the staff of the Rockdale County Hospital, and served as Clinical Director of the Anesthesiology Department under a one year contract entered into on December 19, 1984. Dr. Faucher remained under an expired contract, however, until late March, 1987. At that time the Hospital Authority elected to enter into a contract with Dr. Rodziewicz as Clinical Director, but permitted Dr. Faucher to remain on the medical staff.
 
 
 2
 On June 26, 1987, Dr. Rodziewicz wrote a memorandum requiring roughly twenty-four hours notice if a surgeon wished to utilize Dr. Faucher's services; far fewer surgeons requested Dr. Faucher's services after the memorandum became effective.
 
 
 3
 On August 14, 1987, Dr. Faucher filed a complaint in federal district court alleging that the defendants, acting under color of state law, had deprived her of her constitutionally protected liberty and property interests without due process of law. The district court granted summary judgment in favor of the defendants. We affirm.
 
 I.
 A. FACTS
 
 4
 The Rockdale County Hospital Authority ("the Hospital") granted appellant Dr. Mary Marie Faucher ("Dr. Faucher") medical staff privileges in March 1983, when she joined an anesthesiology group that had an exclusive contract with the hospital to provide anesthesiology services there. On December 19, 1984, Dr. Faucher entered into a one year contract as Clinical Director of the Anesthesiology Department; she remained as director and sole provider of anesthesiology until June 1987, although neither party attempted to renew the contract. Her professional corporation, Milstead Anesthesia, P.C. ("Milstead") became the only provider of anesthesiology services throughout this period.
 
 
 5
 In January 1987 the hospital began a search for a Clinical Director and asked Dr. Faucher to apply for the position. By February 14, 1987, the hospital had narrowed its search and sent identical proposed written contracts to Dr. Faucher, Dr. Rodziewicz and a third candidate. The proposed contract contained substantially the same terms as those included in the hospital's agreements with its other hospital-based physicians, and provided, inter alia, that the physician's medical staff privileges at the hospital would automatically terminate at the end of the contract. Furthermore, because of a recent Georgia Court of Appeals decision holding hospitals liable for the negligence of hospital-based physicians, the proposed contract required the hospital-based physician to indemnify the hospital for any claims arising from his services.
 
 
 6
 Dr. Faucher, unlike the other two candidates, objected vigorously to these terms. On March 3, 1987, Dr. Faucher, after consultation with her attorneys, sent a three-page letter to Mr. Archer Rose, the Executive Director of the Hospital, listing numerous objections. In particular, she strongly objected to the indemnification provisions, and to provisions under which medical staff privileges terminated when the contract ended. On at least three later occasions, Dr. Faucher repeated her unwillingness to enter into the proposed contract. Thus, the hospital instead awarded the contract to Dr. Rodziewicz, who assigned the contract to his professional corporation. The contract was not exclusive, and Dr. Faucher retained her staff privileges at the hospital.[1]
 
 
 7
 On June 26, 1987, still several days before Dr. Rodziewicz's contract went into effect, Dr. Rodziewicz wrote a scheduling memorandum outlining the procedures for surgeons in need of anesthesiology services to follow. The memorandum stated that Dr. Rodziewicz's group would provide anesthesiology services unless a surgeon specifically requested another anesthesiologist by following outlined procedures:
 
 
 8
 For all elective OR cases, the services of Milstead Anesthesia may be requested as follows:
 
 
 9
 On the day immediately prior to the surgical date (e.g., June 30 for a July 1st case), the operating surgeon need only contact me personally between the hours of 8:00 a.m. and 2:00 p.m. and inform me of the request. Should no direct conversation between myself and the operating surgeon take place as specified above, the case will be assigned to Rockdale Anesthesia Services. Please note that Monday cases should be requested on the preceding Friday.
 
 
 10
 (Emphasis supplied)
 
 
 11
 As soon as Dr. Rodziewicz became director, requests for Dr. Faucher's services decreased dramatically.
 
 B. PROCEDURAL HISTORY
 
 12
 Dr. Faucher filed suit in federal district court, and asserted several claims arising out of Dr. Rodziewicz's assumption of the director's position. Her main claim involved a deprivation of her constitutional rights to liberty and property without due process in violation of 42 U.S.C. § 1983. She also alleged a conspiracy to discriminate on the basis of sex in violation of 42 U.S.C. § 1985, and state law claims for interference with business and employee relations. She named as defendants not only Dr. Rodziewicz, but also Mr. Archer A. Rose ("Mr. Rose"), Executive Director of the hospital, for his support of Dr. Rodziewicz's actions and for his own allegedly discriminatory conduct, and the hospital for its alleged role in the situation.
 
 
 13
 On November 8, 1988, the district court granted the defendants' motion for summary judgment on plaintiffs' claims under sections 1983 and 1985, and dismissed without prejudice for lack of jurisdiction Dr. Faucher's pendant state law claims.
 
 
 14
 This appeal followed.II. THE ISSUES ON APPEAL
 
 
 15
 The appellant has raised four issues on appeal. She first contends that the district court erred in holding that there was no state action to support her section 1983 and section 1985 claims. She next asserts that the district court erred in holding that Appellees were protected by a qualified immunity. Thirdly, she contends that the district court incorrectly granted summary judgment on appellants' claim under section 1985. Finally, she asserts that if the district court erred in granting summary judgment under her sections 1983 and 1985 claims, then it should have retained jurisdiction of her pendant state claims.
 
 A. State Action
 
 16
 Sections 1983 and 1985 provide individuals with a private cause of action when constitutional deprivations occur under color of state law. Dr. Faucher claims that she has a protected property or liberty interest, and that the defendant's actions abridging those rights occurred under color of state law.
 
 
 17
 The Rockdale County Hospital Authority is a public hospital established by operation of Georgia law. O.C.G.A. § 31-7-76(a) states:
 
 
 18
 The General Assembly declares that it is the intent of this article to provide a mechanism for the operation and maintenance of needed health care facilities in the several counties and municipalities of this state.
 
 
 19
 Although the Code is silent on the spheres of authority of the Hospital's staff members or director, the Hospital's by-laws prove more useful. They state first that "[d]aily management of the hospital shall be delegated to a qualified executive director ..." (Article I, Section I), in this case, Mr. Rose. The by-laws also discuss the director's duties:
 
 
 20
 Generally, the Executive Director shall act as the executive office of the Hospital Authority, shall be responsible for the management of the Hospital, and shall provide liaison among the Hospital Authority, Medical Staff, Nursing Staff, and other departments of the Hospital ... The Executive Director shall organize the day-to-day functions of the Hospital through appropriate departmentalization and delegation of duties.
 
 
 21
 Article 1, Section 1. (emphasis supplied).
 
 
 22
 The record also indicates that the Hospital Authority directed Mr. Rose to search for a clinical director of anesthesia, and to negotiate a contract with the director selected. Mr. Rose selected Dr. Rodziewicz, and then contractually delegated the following duties to him: "The Anesthesiologist [Dr. Rodziewicz] shall be solely responsible for scheduling any and all anesthesiologists, CRNA's or other persons performing anesthesiology or patient anesthetization services in the Hospital." Thus, we find that both Mr. Rose and Dr. Rodziewicz were integrally involved in the management and administration of the Hospital, and we also find ample support to hold that authorities of a public hospital such as this one act under color of state law for purposes of sections 1983 and 1985:
 
 
 23
 [T]here is no question that when those in charge of the affairs of a public hospital deal with staff ... the dealings must conform to the requirements and prohibitions of the fourteenth amendment. And, if the authorities of a public hospital, acting under color of law, deprive a person of a federally protected right, he may seek redress under § 1983.
 
 
 24
 Briscoe v. Bock, 540 F.2d 392, 394-95 (8th Cir.1976). Similarly, in Malak v. Associated Physicians, Inc., 784 F.2d 277, 282 (7th Cir.1986), a case again involving termination of a physician's staff privileges by a chief executive officer, the Seventh Circuit held that "the conduct of a public hospital and its employees is clearly state action...." Finally, in Smith v. Cleburne County Hosp., 607 F.Supp. 919, 928 (D.C.Ark.1985), where a hospital's medical staff members suspended the plaintiff's staff privileges, a district court characterized the defendants, "... a county facility and county officials ..." as "... acting under color of state law...." In the instant case, therefore, we too hold that Mr. Rose and Dr. Rodziewicz were county officials acting under color of state law for purposes of Dr. Faucher's suit under sections 1983 and 1985.
 
 B. Procedural Due Process
 
 25
 Our next question, now that we have established that appellees' conduct was under color of state law, is whether that conduct deprived Dr. Faucher of any of her due process rights made actionable pursuant to 42 U.S.C. §§ 1983 and 1985. We conclude that it did not.
 
 
 26
 Our threshold question in this matter is whether the Appellees' conduct deprived Dr. Faucher of a protected property interest in her staff privileges or of a protected liberty interest in her professional reputation. In this case, we doubt that such protected interests exist.
 
 
 27
 In order to establish a property interest, the Supreme Court has found:
 
 
 28
 A person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 29
 ....
 
 
 30
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 31
 Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although in this case Dr. Faucher operated for over two years without the benefit of a formal contract between the Hospital Authority and herself, the Supreme Court has held that a legitimate claim may arise from "mutually explicit understandings." Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). See also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Only last year, the Court held that this principle 'proscribing summary dismissal from public employment without hearing or inquiry required by due process' also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment," citing Connell v. Higginbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418). Thus, we cannot say that the absence of a formal contract between Dr. Faucher and the Hospital Authority disposes of her claim.
 
 
 32
 Dr. Faucher cites Northeast Georgia Radiological Associates v. Tidwell, 670 F.2d 507 (5th Cir.1982) to support her assertion that the scheduling memorandum's adverse effect on her case load amounted to a deprivation of her protected property interests. In Tidwell, however, a hospital authority actually terminated the appellant's staff privileges, and the court held that this amounted to a deprivation of a protected interest. No such termination occurred here. Thus, Dr. Faucher's real claim is that the economic value of her medical staff privileges decreased after Dr. Rodziewicz became Clinical Director because fewer surgeons then referred their patients to her:
 
 
 33
 Staff privileges, [however], do not establish an employment contract with the hospital. Nor do they guarantee a doctor that his authorized practice in the hospital will have a particular economic value.
 
 
 34
 Engelstad v. Virginia Mun. Hosp., 718 F.2d 262, 267 (8th Cir.1983). In this case, moreover, we do not wish to transform the economic value of medical staff privileges into a protected property interest.[2]
 
 
 35
 Dr. Faucher has also alleged that Appellee's conduct deprived her of a protected liberty interest. We do not agree. Dr. Faucher has not shown that she was stigmatized by a change of status amounting essentially to a loss of employment, as required by the former Fifth Circuit in Moore v. Otero, 557 F.2d 435, 438 (5th Cir.1977).[3] In Moore, fellow officers reported that the plaintiff, a police corporal, had failed to assist in an off-duty investigation of a possible breaking-and-entering suspect; in consequence, the chief of police reassigned Moore to patrolman's duties. The court held:
 
 
 36
 Assuming that the report and the assignment stigmatizes Moore, his retention of employment negates his claim that he was denied a "liberty".... When an employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that [Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ] reveals does not rise to the level of a liberty interest. The internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the Fourteenth Amendment.
 
 
 37
 Moore, 557 F.2d at 438. In the case before us now, the undisputed record shows that the hospital never terminated or even suspended Dr. Faucher's medical staff privileges. Even after Dr. Rodziewicz became Clinical Director, Dr. Faucher continued to have her full staff privileges and to receive referrals at the Hospital. Under these circumstances, Dr. Faucher's complaint does not allege sufficient facts to implicate the existence of a liberty interest.
 
 
 38
 Even, however, if we were to find that Dr. Faucher has shown a protected property or liberty interest in this matter, we still could not find that appellees' conduct deprived her of those interests without due process of law. The record in this case shows that the Hospital had an extensive internal appeals procedure. Although Dr. Faucher chose not to utilize it, we find that its availability served to fully protect her constitutional rights to procedural due process.
 
 
 39
 The by-laws of the Hospital Authority's medical staff provide, in meticulous detail, for the right to a hearing and the right to an appellate review. For example, under heading of "Hearing," those by-laws state:
 
 
 40
 When any practitioner receives notice of a recommendation of the Executive Committee that, if approved by decision of the Hospital Authority will adversely affect his/her appointment or reappointment to or status as a practitioner of the Medical Staff or his/her exercise of admitting and/or clinical privileges, he/she shall be entitled to a hearing before an Ad Hoc Committee of the Medical Staff. Within fourteen (14) days of the practitioner's receipt of notice of an adverse recommendation, the practitioner who desires and is entitled to a hearing must deliver to the Executive Director of the Hospital a written and signed request for a hearing.
 
 
 41
 Article X, Section (A)(1). The by-laws also provide in detail for the conduct of the hearing (Article X, Section E) and for appellate review of any adverse determination. (Article X, Section A(2)). The Hospital's procedure, then, provided Dr. Faucher with ample scope for review of Dr. Rodziewicz's scheduling memorandum. We find, therefore, that the by-laws' provisions, explicitly detailing opportunities for hearings and appeals, wholly satisfied Dr. Faucher's rights to procedural due process.
 
 
 42
 Dr. Faucher also has attempted to obscure her disregard for the hospital's grievance procedure by labelling the Appellees' conduct as a violation of her substantive due process rights, and she cites as authority this court's opinions in Barnett v. Housing Authority of the City of Atlanta, 707 F.2d 1571 (11th Cir.1983) and Gilmere v. City of Atlanta, Ga., 774 F.2d 1495 (11th Cir.1985). We dispose of this claim briefly. In the first place, the Supreme Court has held that substantive due process is violated only when the government engages in actions which "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 788-89, 89 L.Ed. 1029 (1945). State conduct, in other words, offends substantive due process when it "shocks the conscience" or constitutes force that is so "brutal" as to "offend even hardened sensibilities." Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). In Gilmere this court found that police who had beaten and fatally shot a suspect with virtually no provocation had violated his substantive due process rights. In Barnett, we held that substantive due process was violated when a housing authority scapegoated the plaintiff for his part in a housing controversy, and then endlessly postponed his access to an administrative appeal procedure. No such egregious action has affected Dr. Faucher. In this case, a scheduling memorandum adversely affected her income. She had an opportunity to appeal its impact, and she did not utilize it. Dr. Faucher, in short, has chosen the federal courts to redress grievances already covered by the Hospital Authority's appellate review procedure; that procedure, in itself, sufficed to satisfy her claim.
 
 C. Section 1985(3) Claims
 
 43
 Dr. Faucher has also sought damages under 42 U.S.C. § 1985(3) on the theory that Appellees conspired to deprive her of her due process rights, and were motivated to discriminate against her on the basis of her sex. Inasmuch as procedural due process remained available to Dr. Faucher, this section of her claim may be dismissed. We note in the alternative that the appellees produced evidence that they based their policies on factors unrelated to Dr. Faucher's gender. Dr. Faucher, in her turn, has utterly failed to produce evidence on this issue that could not be characterized as insubstantial. We hold, therefore, that this section of Dr. Faucher's claim must also fail.[4]
 
 D. Qualified Immunity
 
 44
 Because we have found that Appellants did not infringe Dr. Faucher's due process rights, we need not decide whether they are protected by qualified immunity.
 
 E. Pendent State Claims
 
 45
 Dr. Faucher alleged several pendent state law claims. For a federal court to exercise "pendent jurisdiction" over state law claims, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.' " L.A. Draper and Son v. Wheelabrator Frye, Inc., 735 F.2d 414 (11th Cir.1984). The exercise of this jurisdiction is discretionary. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "If the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims." L.A. Draper and Son, 735 F.2d at 428. The district court's decision to dismiss the pendent claim "is to be judged on an abuse of discretion standard." L.A. Draper and Son, 735 F.2d at 420. In the instant case, the district court properly dismissed Dr. Faucher's pendent claims as a result of its dismissal of all of her federal claims.
 
 CONCLUSION
 
 46
 We hold, therefore, that although the Appellants acted under color of state law, they did not deprive Dr. Faucher of any of her due process rights made actionable under 42 U.S.C. §§ 1983 and 1985. Although we do not reach the issue of qualified immunity, we do hold that the district court properly dismissed her pendent state claims.
 
 
 47
 The judgment of the district court is therefore
 
 
 48
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Sam C. Pointer, Jr., Chief U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The contract with Dr. Rodziewicz, however, did provide, that he agree "to provide or to arrange for the provision of all material services involved in the administration of anesthesia in the Hospital, as may be required or requested by the patients, physicians and surgeons using the facilities of the Hospital" (Agreement, Section 2). (Emphasis supplied)
 
 
 [2]
 For further guidance on the issue of medical staff privileges as a protected property interest, see Shahawy v. Harrison, 778 F.2d 636, 643 (11th Cir.1985), (to establish a protected property interest, Shahawy must allege injury to a contract right or an inability to practice medicine without the cardiac catheterization privileges). See also Daly v. Sprague, 675 F.2d 716, 727 (5th Cir.1982) (Daly, who provided "no facts to show that his clinical privileges would be analogous to medical staff privileges, that there was any explicit or implicit written or oral argument or understanding which created an entitlement to those privileges, or that the removal of his clinical privileges actually totally foreclosed his ability to practice ... did not meet his burden of presenting facts to show that a property interest existed.") Finally, see Note, "Procedural Due Process Rights of Physicians Applying for Hospital Staff Privileges." 17 Loy.U.Chi.L.J. 453 (1986)
 
 
 [3]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [4]
 We note parenthetically that in Great American S & L Ass'n v. Novotny, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court appeared to hold that the only conspiracies actionable under Section 1985 were those motivated by racial animus. There, the Court stated that "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." Novotny, 442 U.S. at 378, 99 S.Ct. at 2352. Since Novotny arose in the context of private employment, however, we will not flatly conclude that Dr. Faucher may not bring her claim for gender-based discrimination under the auspices of Section 1985(3). We save that question for another day