Douglas Norman **EVANS**, Jr., Plaintiff,

v.

**THE CITY OF NEPTUNE BEACH, a municipal corporation, and John Jason Marshall, individually, Defendants.**

No. 97–483–CIV–J–21–A.

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 23, 1998.

Motion to Amend Denied,
May 26, 1999.

Alva A. Hollon, Jr., John O. Hollon, Sams & Hollon, P.A., Jacksonville, FL, for Douglas Norman Evans, Jr., plaintiff.

Susan S. Erdelyi, Leigh A. Studdard, Marks, Gray, Conroy & Gibbs, P.A., Christopher Charles Hazelip, Gregory F. Lunny, Adrian Rust, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, FL, for City of Neptune Beach, defendant.

Christopher Charles Hazelip, Gregory F. Lunny, Adrian Rust, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, FL, for john Jason Marshall, defendant.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on Defendant, City of Neptune Beach's, Motion for Partial Summary Judgment (Dkt.42) and Plaintiff's Response (Dkt.71) in opposition thereto, as well as Defendant, John Jason Marshall's, Motion for Summary Judgment (Dkt.46) and Plaintiff's Response (Dkt.67) in opposition thereto.

This case arises from the June 9, 1996, arrest of Plaintiff Douglas Norman Evans following his intercession into a fistfight that occurred outside of his home. Plaintiff has brought this suit asserting various state common law and federal constitutional challenges to the actions of the arresting officer, who hit Plaintiff several times and knocked him to the ground with his baton in the course of arresting Plaintiff. These claims have been asserted individually against John Jason Marshall ("Marshall"), the Neptune Beach Public Safety Department Officer who arrested Plaintiff, and also against the City of Neptune Beach ("City"), the municipality that employed Marshall.

Plaintiff's First Amended Complaint (Dkt.30) presents a total of eleven counts against the two Defendants. Specifically, Plaintiff has asserted nine state common law claims against the Defendants. These claims are for False Imprisonment against both the City (Count I) and Marshall (Count II); for Malicious Prosecution against Marshall (Count III); for Battery against both the City (Count IV) and Marshall (Count V); and for Negligent Hiring (Count VIII), Training (Count IX), Supervision (Count X), and Retention (Count XI) against the City. Additionally, Plaintiff has asserted two claims, pursuant to 42 U.S.C. § 1983, for violations of his federal constitutional rights under the Fourth Amendment. The federal claims are asserted against both the City (Count VI) and Mar-

shall (Count VII). These latter two claims are the subject of this Order.

Defendant City has moved for summary judgment as to Count I (state law false imprisonment), Count VI (§ 1983), and Counts VIII–XI (negligent hiring, training, supervision, and retention, resp.). Defendant Marshall has moved for summary judgment as to all counts asserted against him, to wit Count II (state law false imprisonment), Count III (Malicious prosecution), Count V (Battery), and Count VII (§ 1983). Plaintiff has filed responses to both motions. Because the Court concludes that Officer Marshall's actions were reasonable under the Fourth Amendment, and therefore that no excessive force, false arrest, or false imprisonment claims can arise thereunder, the Court herein grants summary judgment as to both Defendants on the § 1983 claims. Further, as such disposition resolves all of the claims over which this Court has independent subject matter jurisdiction, the Court exercises its discretion pursuant to 28 U.S.C. § 1367(c)(3) and herein dismisses the remaining state law claims.

### I. Summary Judgment Standard

The Court will enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. On the issue of materiality, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

The movant bears the burden of establishing the absence of dispute over material facts. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir. 1993). Where, as here, the party opposing the summary judgment motion has the burden of proof at trial, the moving party

must either point out to the Court specific portions of the record which show that the nonmoving party cannot prevail at trial, or introduce affirmative evidence negating the opposing party's case. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991). In determining whether the party seeking summary judgment has met its initial burden, the Court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606 (11th Cir.1991). Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Reynolds*, 989 F.2d at 469.

If the moving party does not meet its burden, the motion for summary judgment will be denied. *Four Parcels of Real Property*, 941 F.2d at 1437. Where the moving party meets its initial burden, the burden shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

## II. Factual Background

Plaintiff and Defendants disagree somewhat over the exact occurrences on the night of June 9, 1996; however, when viewed in a light most favorable to Plaintiff, the evidence, and inferences drawn therefrom, establish the following. (Where Officer Marshall's account differs, such is set forth.)

Plaintiff was in his house on the evening of June 9, 1996, at approximately 6:45 P.M., when he heard a verbal altercation outside. When Plaintiff went outside to investigate, he saw two individuals engaged in a fist-fight in front of his house. A large crowd, estimated by Plaintiff to number between 30 and 50, had gathered and was watching the fight; various members of the crowd were yelling and screaming at the participants. The fight was rather violent, with the combatants becoming bloodied and scraped, and their clothes torn and dirty. Further, the fight was apparently escalating: one of the combatants, as heard and seen by the spectators, threatened his opponent with, and then retrieved from his car, a piece of metal pipe; and when Defendant Marshall arrived on the scene, he witnessed one of the combatants throw a trash can at another.

Upon viewing the fight, Plaintiff, who possesses martial arts training, decided to and thereafter attempted to intercede in and break up the fight. Specifically, he executed various restraining or debilitating martial arts moves on one or more of the combatants several times in attempts to dissuade them from further fisticuffs. At or about this time, a third combatant entered the fight.

According to his testimony, Plaintiff was only temporarily successful in his efforts: as soon as he would release a combatant from a restraining hold, that combatant would resume fighting with the others. Further, the combatants were becoming angered by Plaintiff's interference in their fight and made threatening statements and moves towards him whenever he interfered. After his first two interventions, Plaintiff attempted to break up the fight a third time, but, as he has testified, broke off his effort and began to walk away from the combatants.

Sometime during Plaintiff's intercession into the fight, one or more persons called the authorities and informed them of the fight, and specifically of the fact that one assailant possessed, or threatened the use of, a pipe or metal bat. This information was relayed to the Neptune Beach Public Safety Department ("NBPSD"), whose dispatcher relayed to Defendant Marshall, the on-duty officer closest to the scene of the fight, the following information: that a fight was ongoing among several men, that one was armed with a large bat or pipe, and that a large crowd had gathered. Officer Marshall, who was uniformed and driving a marked patrol car, arrived on the scene shortly thereafter.

There is some disagreement about the point in Plaintiff's intercession in the fight at which Defendant Marshall arrived on the scene. Specifically, Plaintiff asserts

that he had already broken off his third attempt to end the fight, had begun to walk away from the combatants, and was some five to seven feet away from them when Marshall arrived (Dkt.54, p. 67, lns.3–4). Defendant Marshall asserts that when he arrived on the scene he saw four men, including Plaintiff, actively fighting, and that thereafter Plaintiff began walking away from the combatants and towards Officer Marshall. It is undisputed that when Officer Marshall arrived, one of the other three men still actively fighting slipped into the crowd.

As Defendant Marshall exited his car, he drew his baton and began running towards the fight, yelling at the combatants to stop fighting and ordering, "On the ground now." At this time, it is undisputed that Plaintiff was walking away from the combatants, towards Marshall. Plaintiff asserts that as he walked towards Marshall, he was raising his hands above his head, apparently to show his submission, and was stating that he was not involved in the fight. As Marshall got closer to Plaintiff, Plaintiff admits that he turned slightly sideways, moving one of his feet back a couple of inches, to allow Marshall to get by him and to the combatants.

Defendant Marshall's account of the events is slightly different. He asserts that as he approached Plaintiff, Plaintiff's hands were "moving around," not remaining in one position, and further that Plaintiff did not state that he was not involved in the fight. Further, Defendant Marshall asserts that Plaintiff's "slight moving of his

leg" appeared to him to be Plaintiff's shifting of his weight back onto one leg, in the assumption of a karate-style fighting stance.

As stated above, when Officer Marshall arrived and began approaching the combatants, he ordered them to stop fighting and to get "[o]n the ground now." Plaintiff admits that he did not immediately comply with this direction because, he did not think the order applied to him because, in his opinion, he was not involved in the fight. When Plaintiff did not comply with Officer Marshall's direction to get on the ground, Marshall struck him twice with his baton in the area of his buttocks.[1] According to Plaintiff, Officer Marshall then yelled "On the ground now" again and struck Plaintiff twice more in the area of his thigh and/or knee; Defendant Marshall does not recall hitting Plaintiff more than the first two times. At this point, Plaintiff dropped to his knees and then onto the ground on his stomach.[2] About this time, members of the crowd began yelling at Defendant Marshall that Plaintiff was not involved in the fight.

There is some dispute about the amount of time, or more specifically whether Marshall gave Plaintiff sufficient time to comply, between the time that Marshall first ordered everyone on the ground and the time that he first struck Plaintiff with his baton. Plaintiff relies on the testimony of Mason Letellier, who asserts that, in his opinion, Marshall did not give the men enough time to comply.[3] Specifically, Le-

1. Several times in his deposition, Plaintiff refers to being struck in his "glut." Presumably, Plaintiff is referring to the glutei, the large muscles of the buttocks.

2. Plaintiff has offered the deposition testimony of Letellier and another witness, Charles McGarity, that Marshall hit Plaintiff at least one more time after he dropped to the ground on his stomach. Specifically, Letellier states that after Plaintiff dropped to the ground, he saw Marshall swing his baton again, but could not see where the blows landed because a car blocked his view of the then-prone Plaintiff. (Dkt.58, p. 15, lns.17–21.) McGarity states that he saw Marshall hit Plaintiff

once or twice after he laid down on the ground. (Dkt.52, p. 10, lns.5–6.) However, Plaintiff's account of the period from when Marshall first arrived until the point at which he was handcuffed contains no statement that Plaintiff was struck after he laid down on the ground. (Dkt. 54, p. 69 ln 1–p.75 ln.21.)

3. Letellier's opinion that the men were not given enough time to comply is based on his opinion that the men fighting posed no immediate threat to Officer Marshall and on his knowledge, gained by his observation of the fight for some time before Marshall's arrival, that the men fighting were rather inebriated and thus, in his opinion, less dangerous.

tellier estimated that only two to three seconds elapsed between when Marshall first gave his command and when he first hit Plaintiff.[4]

After Plaintiff dropped onto the ground on his stomach, he remained there. By this time, other officers had arrived on the scene. Plaintiff was eventually handcuffed, transported to the NBPSD, and then to the Duval County jail, where he spent one night before being released on bond. Subsequently all charges against Plaintiff were dismissed.

After his arrest and release from custody, Plaintiff filed a complaint with the NBPSD. The complaint was investigated by NBPSD Lt. Rhodes. After conducting his investigation, Lt. Rhodes concluded that, on the night in question, Plaintiff committed no crime that would warrant his arrest. Further, Lt. Rhodes concluded that Marshall violated a provision of the procedures of the NBPSD by inappropriately using force. Marshall was subsequently terminated by the NBPSD based on this incident.

### III. Discussion

As an initial matter, it should be noted that Plaintiff's Response (Dkt.71) to the City's Motion for Summary Judgment does not at all respond to the City's arguments regarding the § 1983 claim asserted against it. By such failure, Plaintiff essentially concedes the insufficiency of that claim (and its components). However, as Plaintiff's Response (Dkt.67) to Marshall's Motion for Summary Judgment does respond to Marshall's arguments regarding the § 1983 claim asserted against him, it is still necessary for the Court to examine the underlying constitutional right that was allegedly violated, and which forms the basis for both § 1983 claims.

### A. The Federal Claims (Counts VI & VII)

As noted, Plaintiff has asserted claims against both the City and Marshall pursuant to § 1983, based on his federal constitutional rights under the Fourth Amendment. As to the claim against the City, success depends upon proof of either a custom, policy or practice, *see Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(holding that municipal governments may be sued under § 1983 but limiting such liability to instances where official municipal policy causes a constitutional tort), or proof of knowing failure to provide adequate training, *see City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)(holding that municipalities can be liable under § 1983 for failure to train only where such failure reflects a deliberate indifference to constitutional rights); as to the claim against Marshall, success depends upon proof of violation of a clearly-established constitutional right, *see, e.g., Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149–51 (11th Cir.1994)(discussing doctrine of qualified immunity)(en banc). However, all of these claims fail without proof of violation of some underlying constitutional right. *See Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)(holding that determination that officer's conduct did not violate any constitutional rights precludes municipal liability under § 1983 as well as any inquiry into constitutionality of municipal policies, practices, or customs); *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994)(examining plaintiff's contentions to determine whether he stated a constitutional violation before examining defendants' assertion of qualified immunity).

---

**4.** Plaintiff himself contradicts this testimony in his deposition, wherein he states that Marshall first ordered those fighting to get on the ground when he exited his patrol car, before he ran over towards the scene of the fight, where he encountered Plaintiff. More fundamentally, Plaintiff contradicts himself by arguing that any period of time would have been sufficient for him to comply with Marshall's first command because, as Plaintiff has stated, he at first did not think that Marshall's order was directed at him and thus he did not intend to comply with it.

In the instant case, the rights allegedly violated are those protected by the Fourth Amendment [5] to the U.S. Constitution, which provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Specifically, Plaintiff asserts violation of the Fourth Amendment's prohibitions that give rise to a citizen's right not to be subject to excessive force in the course of an arrest, investigatory stop, or other "seizure"; his right not to be arrested without probable cause; and his right not to be imprisoned unless pursuant to a lawful arrest. In all instances, the ultimate question is the objective reasonableness of Officer Marshall's actions in striking and arresting Plaintiff. But as the factors examined in each subtype of claim differ somewhat, the Court will examine these claims separately.

1. *The Fourth Amendment and Excessive Force*

■ As stated above, the Fourth Amendment prohibits the government from using excessive force in carrying out their duties, whether it be an arrest, investigatory stop, or other "seizure" of a free citizen. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under an excessive force analysis, the Court is required to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *See*

*Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ One of the specific factors to be considered in a Fourth Amendment reasonableness inquiry is the extent of the intrusion; thus reasonableness necessarily implicates both when a seizure is made and how it is carried out. *Garner*, 471 U.S. at 8, 105 S.Ct. 1694. Additional specific factors in the reasonableness inquiry include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Connor*, 490 U.S. at 396, 109 S.Ct. 1865. The Supreme Court has directed that the reasonableness inquiry be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than with the 20/20 vision of hindsight, as the former allows for proper appreciation of the fact that police officers are often forced to make their decisions about how much force to use in situations that are tense, uncertain, and rapidly evolving. *Connor*, 490 U.S. at 396–97, 109 S.Ct. 1865. Lastly, it must be emphasized that the reasonableness inquiry of the Fourth Amendment is an objective standard—whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him at the scene, without regard to his underlying intent or motivation. *Connor*, 490 U.S. at 397, 109 S.Ct. 1865.

■ In this case, the Court concludes that, under the version of the facts most favorable to Plaintiff, Officer Marshall's actions were reasonable. That is, the Court concludes that the importance of the government interests alleged to justify the intrusion on Plaintiff's rights outweighs

---

**5.** Following the Supreme Court's decisions in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) and *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), it is clear that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Connor*, 490 U.S. at 395, 109 S.Ct. 1865. This same reasoning is clearly also applicable to false arrest/imprisonment claims.

the nature and quality of the intrusion on those rights.

In this case, the relevant crime was rather serious: a violent fist-fight that was apparently escalating to one involving weapons (i.e., the pipe, trash can). Further, Officer Marshall reasonably could have considered not only his own safety, but also that of the large crowd, and even of the combatants. And when Officer Marshall arrived on the scene he observed Plaintiff acting in a manner that Marshall reasonably could have concluded indicated both Plaintiff's involvement in the fight (his walking away from the combatants) and Plaintiff's intention to either hinder Marshall's efforts to stop the fight and arrest the suspects or intention to assault Marshall (walking towards Marshall, not leaving his hands visible and still, shifting his stance backwards as the two neared). In the face of such uncertainty and Plaintiff's failure to even stop his movement in response to Marshall's command, Marshall could reasonably have concluded that it was necessary to swiftly utilize non-lethal force to eliminate or minimize the threat that Plaintiff presented.

Further, although the issue has not been directly discussed by the parties, it is important to consider the force utilized by Marshall and the manner in which he utilized it. Unlike a gun, a baton is a weapon that is generally less likely to be lethal. Further, common sense dictates that the lethality of a baton blow depends on the portion of the body it strikes: a blow to a large muscle mass, such as the thigh or buttocks is most likely to produce only pain and bruising; whereas a blow to a joint, such as the knee, elbow, could produce a fracture and a blow to the head or neck could very easily cause serious injury or death. In this case, according to Plaintiff, he was hit in the thigh several times and in the knee once, clearly non-lethal, and likely not permanently injurious, blows but, most importantly, a reasonable response to a reasonably perceived threat.

Plaintiff pays but lip service to the rule of *Connor* and *Garner* when he argues that Marshall did not give Plaintiff, or any of the combatants, enough time to comply with his commands. Such argument attempts to imbue Marshall with the knowledge of Letellier or others, who had observed the scene much longer than Marshall and who knew that Evans was not a primary combatant. Such is viewing the event with hindsight or omniscience, which is improper under the standard of *Connor* and *Garner*.

Plaintiff also makes much of the fact that witnesses have testified that, unlike the other participants in the fight, Plaintiff's clothes were not dirtied and torn and he was not scraped and bloodied. Plaintiff thus asserts that when he arrived on the scene Officer Marshall could not reasonably have assumed that Evans was a participant in the fight. First, such argument assumes that the Fourth Amendment requires a law enforcement officer to arrive on an unfamiliar, chaotic scene and immediately be able to discern such details. Given that the Fourth Amendment, as a general proposition, only requires reasonable action under the circumstances, it certainly cannot impose the obligations implicit in Plaintiff's argument. Further, not all fights are even matches. Plaintiff's assertion plainly overlooks the fact that Officer Marshall, if he had noticed the difference between Plaintiff's appearance and that of the other participants, could still reasonably have concluded that Evans was a latecomer to the fight or merely a participant in the fight who had been getting the better of the other (more inebriated) combatants until Marshall's arrival, when he decided to make his exit.

Plaintiff also makes much of the NBPSD's subsequent decision to terminate Marshall based on its conclusion that his use of force on Plaintiff was inconsistent with the policies of that Department. Plaintiff, however, has not demonstrated how the standards of the NBPSD are like those imposed by the Fourth Amendment. Rather, Plaintiff has merely offered the fact of Marshall's termination, and would

have the Court conclude that because the NBPSD determined that Marshall erred that Marshall must also have violated the Fourth Amendment.

Upon considering all of these factors, as well as the arguments forwarded by Plaintiff, the Court concludes that force utilized by Defendant Marshall was not unreasonably excessive. Rather, based on the version of the facts most favorable to Plaintiff, Officer Marshall could reasonably have mistaken Plaintiff for a combatant and could reasonably have believed that the force he used was necessary to protect himself and others, effect the arrests of the combatants, and restore order.

### 2. *The Fourth Amendment and False Arrest / False Imprisonment* [6]

■ As stated above, the Fourth Amendment prohibits the government from arresting a citizen without probable cause. It is established that a law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, or committing, or is about to commit an offense. *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir. 1990).

■ In this case, the Court concludes that Marshall had probable cause to arrest Plaintiff. There is no dispute that the dispatcher told Officer Marshall that several men were fighting and that one was armed with a large bat or pipe, or that upon arriving at the scene Marshall witnessed one of the three combatants slip into the crowd. Further, accepting Plaintiff's version of the facts, when Marshall arrived at the scene, Plaintiff was in close proximity to (five to seven feet from) the combatants but walking away from them.

Based upon these facts, the Court concludes that a prudent person could believe that Plaintiff was a participant in the fight and thus had committed an offense for which he could be arrested.

Additionally, there is no dispute that as Officer Marshall exited his car, ordered the combatants to stop fighting and to get on the ground, and ran towards the combatants, Plaintiff began approaching Marshall, was not keeping his hands still and entirely visible, and shifted his stance as Marshall got close to him. Based upon these facts, the Court concludes that a prudent person could believe that Plaintiff was a participant in the fight who intended to, at a minimum, slip away and evade arrest, or perhaps to hinder the officer's apprehension of the other combatants, or even, worst of all, to assault the officer, and thus a prudent person could conclude that Plaintiff had committed an offense or offenses for which he could be arrested.

To the extent that Plaintiff argues that Marshall did not have probable cause to arrest Plaintiff because he could not have reasonably believed that Plaintiff was a participant in the fight because of the asserted difference in appearance of Plaintiff (e.g., not bloodied; intact clothing), the Court refers to its conclusions above in part III.A.1. Specifically, the Court would reiterate that the mere difference in the appearance of Plaintiff from the other two primary combatants does not preclude the reasonable conclusion by Marshall that Plaintiff was either a late-comer to the fight or simply a more skilled fighter.

Further, to the extent that Plaintiff argues that Marshall did not have probable cause to arrest Plaintiff because he could not have reasonably believed that Plaintiff was a participant in the fight because witnesses to the fight assertedly vouched for Plaintiff's innocence and non-involvement,

---

**6.** Since the instant is a case in which Plaintiff's alleged false imprisonment arose from his asserted wrongful arrest, the Court has collapsed the discussion of the two claims, as has Plaintiff in his Response (Dkt. 67 at 13–

16) to Marshall's summary judgment motion. As noted above, Plaintiff's Response (Dkt.71) to the City's summary judgment motion presents no argument regarding any of the § 1983 claims against the City.

the Court disagrees. The Fourth Amendment does not require law enforcement officers to disregard their own reasonable judgements and trust the statements of unknown parties who might have biases or ulterior motives. Such is especially the case when the officer has personally observed facts contradicting such statements, and even more so when the statements are made by members of a crowd that has gathered to watch a fist-fight in the street.

■■■■ Regarding Plaintiff's § 1983 false imprisonment claim, to the extent such is separate from his § 1983 false arrest claim, the Court concludes that because Marshall had probable cause to arrest Plaintiff, the confinement of Plaintiff that resulted therefrom was also not unlawful.

### B. The State Law Claims (Counts I—V & VIII—XI)

The requisite complete diversity of citizenship between the parties lacking, the Court's subject matter jurisdiction over the various state common law negligence claims is predicated on the supplemental jurisdiction of 28 U.S.C. § 1367(a) (codifying *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). However, supplemental jurisdiction is discretionary,[7] and a district court may decline to exercise jurisdiction under § 1367(a) if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Plaintiff's federal law claims having been dismissed, the appropriate forum for his state law claims is in the courts of the state under whose law the alleged acts and omissions are claimed to be actionable. Therefore, the Court will dismiss Counts I through V and VIII through XI pursuant

to § 1367(c)(3).[8] Such dismissal is, of course, without prejudice.[9]

### IV. Conclusion

By a combination of good intentions and bad judgment, Plaintiff sought to usurp the functions of law enforcement and attempted to break up a fist-fight. In so doing, he took actions which a law enforcement officer arriving on the scene, alone and possessing only that information known to Officer Marshall, could reasonably mistake as indicative of Plaintiff's participation in the fight, his confrontation of the officer, and/or his intent to hinder or even harm the officer.

Notwithstanding the subsequent conclusions of the NBPSD to the contrary, the reasonableness requirement of the Fourth Amendment allows a margin of error to account for the fact that law enforcement officers are constantly required to insert themselves into and then defuse situations that are tense, uncertain, and rapidly evolving, such as the fight that took place in front of Plaintiff's house on June 9, 1996. Recognizing such, the Fourth Amendment does not rely on hindsight, but rather the objective standard of what reasonable law enforcement officers would do under the same circumstances. The Court concludes that under such standard Officer Marshall acted reasonably and, specifically, that he did not act in violation of the U.S. Constitution.

Upon consideration thereof, it is hereby **ORDERED and ADJUDGED:**

1.  Defendant, City of Neptune Beach's, Motion for Partial Summary Judgment (Dkt.42) is **GRANTED in part.**

---

**7.** *Faucher v. Rodziewicz,* 891 F.2d 864, 871 (11 Cir.1990)(citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130).

**8.** "If the federal claims are dismissed prior to trial, Gibbs [sic] strongly encourages or even requires dismissal of the state claims." *Faucher,* 891 F.2d at 871 (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414 (11 Cir.1984)).

**9.** The Court makes no determination regarding the preclusive effects of the holdings herein on the remaining claims. Such is a matter entirely for the state court's consideration, should Plaintiff hereafter reinstitute his state law claims in that court.

2. Defendant, John Jason Marshall's, Motion for Summary Judgment (Dkt.46) is **GRANTED in part.**

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff on Counts VI and VII of Plaintiff's Amended Complaint (Dkt.30).

4. Counts I through V and VIII through XI of Plaintiff's Amended Complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

5. The Clerk is **DIRECTED** to close this case and terminate all other pending motions as moot.

### ORDER

This cause comes before the Court on Plaintiff's Motion to Alter, Amend and/or Set Aside Judgment (Dkt.76) and Defendants' Joint Memorandum (Dkt.82) in opposition thereto. By Order (Dkt.74) of December 23, 1998, the Court granted summary judgment in favor of Defendants on Plaintiff's 42 U.S.C. § 1983 claims and dismissed his state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Clerk then entered a Judgment (Dkt.75) in favor of Defendants and against Plaintiff.

By the instant motion Plaintiff now seeks to vacate that Judgment and reconsider the underlying Order, asserting essentially that the Court failed to resolve all reasonable doubts about material factual issues in favor of Plaintiff when it granted summary judgment in favor of Defendants. As set forth in their Joint Memorandum, Defendants oppose the motion.

Having reviewed the record, the December 23, 1998, summary judgment Order, Plaintiff's instant motion, and Defendants' joint response thereto, the Court concludes that Plaintiff's request to alter, amend, or set aside that prior Order is due to be denied. The Order speaks for itself, insofar as it clearly sets forth the version of the material facts most favorable to Plaintiff and relies thereon in making the legal conclusions, stated therein, which support the granting of summary judgment in fa-

vor of Defendants. To the extent that Plaintiff's instant motion has created the appearance of any questions about the correctness of that Order, the Defendants' joint response thereto dispels them.

Upon consideration thereof, it is hereby **ORDERED and ADJUDGED** that Plaintiff's Motion to Alter, Amend and/or Set Aside Judgment (Dkt.76) is **DENIED.**